UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BRENDAN NASBY,

                                Petitioner,

    v.

E.K. MCDANIEL, et al.,

                                Respondents.

Case No. 3:07-cv-00304-LRH-WGC

**ORDER**

Petitioner Brendan Nasby, a Nevada prisoner,[1] filed an Amended Petition for Writ of Habeas Corpus (ECF No. 176) ("Petition") under 28 U.S.C. § 2254. This matter is before the Court for adjudication on the merits of the remaining grounds in the Petition. For the reasons discussed below, the Court denies the Petition and a Certificate of Appealability.

## I.    BACKGROUND[2]

Nasby challenges a conviction and sentence imposed by the Eighth Judicial District Court for Clark County, Nevada ("state court") pursuant to a jury verdict finding him guilty of first-degree murder and conspiracy to commit murder in connection with Michael Beasley's ("Beasley") death. ECF No. 119-3. The state court entered a judgment of conviction in December 1999. ECF No. 134-4. The state court sentenced Nasby to 48 to 120 months on the conspiracy count and to life with the possibility of parole on the first-degree murder count, plus an equal and

---

[1] It appears from the state corrections department's inmate locator page that Petitioner is incarcerated at the Lovelock Correctional Center ("LCC"). *See* https://ofdsearch.doc.nv.gov/form.php (retrieved March 2022 under identification number 63618). The department's website reflects that Tim Garrett is the warden of that facility. *See* https://doc.nv.gov/Facilities/LCC_Facility/ (retrieved February 2022). At the end of this order, the Court directs the Clerk of the Court to substitute Petitioner's current immediate physical custodian, Tim Garrett, as Respondent for the prior Respondent E.K. McDaniel, pursuant to, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

[2] The Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court summarizes the factual assertions solely as background to the issues presented in the case, and it does not summarize all such material. No statement of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by the Court. Any absence of mention of a specific piece of evidence or category of evidence does not signify that the Court has overlooked the evidence in considering Petitioner's claim.

consecutive term of life with the possibility of parole for the use of a deadly weapon. *Id.* The State also charged three individuals, Jeremiah Deskin ("Jeremiah"), Tommie Burnside, Jr. ("Tommie"), and Jotee Burnside ("Jotee"), with accessory to murder in connection with Beasley's death. ECF Nos. 132-1; 136-4; 136-14.

Jeremiah testified at Nasby's trial that he was an acquaintance or friend of the members of the L.A. Crazy Riders gang, which Nasby led, and that Tommie and Jotee are brothers and members of the gang. ECF No. 133-1 at 19–21. He also testified that one month before Beasley's death, Nasby discussed with Tommie, Jotee, Jeremiah, and another member of the gang whether Beasley should be killed. *Id.* at 21. Nasby believed Beasley was trying to remove Nasby as the leader of L.A. Crazy Riders. *Id.* at 22. Jeremiah further testified that he was at Nasby's house on July 16, 1998, the night of Beasley's murder. *Id.* at 22. While in the garage, Nasby and Tommie called Jeremiah into the garage and asked him to pick up Beasley because Nasby wanted to take Beasley to the desert to shoot him. *Id.* Jeremiah, along with Tommie and Jotee, then drove to Beasley's house to pick him up. *Id.* at 23. Beasley agreed to go to the desert to smoke marijuana and shoot firearms. *Id.* at 23.

After picking up Beasley, they returned to Nasby's house. *Id.* at 25. Outside of Nasby's garage, Nasby showed the group his 9mm Browning firearm that he purchased from an individual named David. *Id*. Jeremiah then drove Nasby, Tommie, Jotee, and Beasley to the desert and stopped his car near a wash that was littered with debris, including refrigerators and tires. *Id.* at 26. Jeremiah left his car headlights on. *Id.* The group got out of the car and looked for debris to shoot at. *Id*. Nasby was in possession of his firearm, which was the only firearm that they took to the desert. *Id*. at 26–27.

Jeremiah further testified that he observed Nasby approach Beasley while Beasley had his back to Nasby and was looking towards the wash. *Id.* at 27. Nasby shot Beasley in his upper back. *Id.* at 28. Beasley grabbed his shoulder and fell to one knee. *Id.* Nasby stepped closer to Beasley and shot Beasley again in his neck or head area. *Id.* Beasley fell to the ground and rolled onto his back. *Id.* Jeremiah got back into his car, and Tommie, Jotee, and Nasby ran back to the car. *Id.* While Jeremiah backed the car up, Nasby hopped back out of the car. *Id.* Jeremiah stopped the car

and observed Nasby walk to Beasley, stand above Beasley, and shoot down towards Beasley's head. *Id.* Jeremiah testified that when Nasby returned to the car he stated, "try to take me off my own set," and warned the group that if they ratted Nasby out that they would die. *Id.* at 29.

Jeremiah moved to California soon after that night. *Id.* at 30. He was arrested and charged with murder and conspiracy to commit murder. *Id.* Jeremiah testified that he reached an agreement with the State wherein he pled guilty to a lesser charge, accessory to murder, in exchange for his testimony. *Id.*

Tommie testified that he was a member of L.A. Crazy Riders. ECF No. 133-3 at 24. He was at Nasby's house on July 16, 1998, when he called Beasley. *Id.* He testified that he went to the mountains with Jotee, Jeremiah, Nasby, and Beasley. *Id.* at 25. While there, Nasby shot Beasley. *Id.* Tommie previously gave a statement to detectives that Charles Von Lewis, also known as Sugar Bear, had approached him to discuss whether Beasley should be killed and that Von Lewis was present on the night that Beasley was killed. *Id.* at 30. However, at trial, Tommie testified that Von Lewis was not present when Beasley was killed and that his previous statements to detectives regarding Von Lewis were not true. *Id.* Tommie testified that he was charged for Beasley's murder but pled guilty to accessory to murder. *Id* at 25. The state court sentenced Tommie to 12 to 36 months, and he was eligible for parole. *Id.* at 30. If Tommie didn't testify, he would be held in contempt. *Id.*

Jotee testified that he was an associate or friends with L.A. Crazy Riders. *Id.* at 32. He went with Tommie and Jeremiah to pick up Beasley. *Id.* at 32–33. After picking up Beasley, they returned to Nasby's house before going to the desert. *Id.* at 33. Jotee testified that he was standing on the side of Beasley when he was shot, and that Nasby was behind them. *Id.* Nasby shot Beasley. *Id.* He testified that he had previously told the detectives that Von Lewis killed Beasley because he disliked Von Lewis. *Id.* The statement he originally provided to the detectives regarding Von Lewis was not true. *Id.* Jotee testified that he pled guilty to accessory to murder and was sentenced to 12 to 30 months. *Id.* He was eligible for parole. *Id.* at 37.

Beasley's aunt, Jomeka Beavers ("Beavers"), testified that she resided in the same house as Beasley on the night of his death. ECF No. 133-1 at 58. She testified that she answered the

telephone on the night of July 16, 1998, and the caller asked to speak to Beasley. *Id*. Beasley asked Beavers to watch his newborn baby while he went out, and she agreed. *Id*. at 59. Beavers testified that she saw Beasley leave with Jeremiah. *Id*. She did not see Von Lewis that night. *Id.*

An individual named Crystal Bradley ("Bradley") testified that she was a member of L.A. Crazy Riders and that Nasby led the gang. ECF No. 133-2 at 11. She further testified that in the morning of July 17, 1998, she spoke to Tanesha Banks ("Banks"), the mother of Beasley's child, on the telephone. *Id*. at 12. Bradley and Banks discussed a rumor that Beasley planned to leave L.A. Crazy Riders and then conference-called Nasby. *Id*. at 13. Nasby asked to speak to Bradley without Banks on the line. *Id*. Bradley testified that Nasby told her that he had shot Beasley three times while they were out in the desert. *Id*. Bradley then called Banks to tell her what Nasby said. *Id*. at 14.

Banks testified that on July 16, 1998, Beasley picked up their newborn child from her house. *Id*. at 4. The following morning, Banks spoke to Bradley on the telephone about Beasley. *Id.* at 4–5. Bradley called Nasby while still on the phone with Banks. *Id*. at 5. Nasby asked Banks when she last saw Beasley, and she answered that morning. Banks testified that Nasby sounded "panicky," and asked, "what do you mean this morning?," to which she clarified that she meant to say last night when he came to get the baby. *Id*. at 6. Banks testified that when Bradley called her back, she learned that about Beasley's death. *Id*. at 7. Banks informed the police about her conversation with Bradley. *Id*. On August 1, 1998, an individual named Brittney Adams ("Adams"), who also associated with the L.A. Crazy Riders, went to Banks's home and beat up Banks *Id*. Banks testified that Adams believed Banks told others that Nasby killed Beasley and that she "need[ed] to keep [her] mouth shut about [Nasby.]" *Id*. at 7–8. Banks further testified that Nasby called her while he was in custody to threaten her. (*Id*. at 8.) She testified that he stated he could have her "touched," meaning killed or beaten, if she testified against him. *Id*. Nasby told Banks that he did not kill Beasley and that he had her social security number and address. *Id*.

Adams testified that she associated with the L.A. Crazy Riders and that Nasby led the gang. ECF No. 133-3 at 39. On August 1, 1998, Adams went to Nasby's house and Nasby told her that Von Lewis killed Beasley. *Id*. at 41. Nasby told her that Von Lewis, Tanesha, and Crystal drove

Beasley to the desert, Crystal loaded a 9mm gun, and handed the gun to Von Lewis. *Id.* They forced Beasley out of the car, and Von Lewis shot Beasley twice in the neck and once in the head. *Id*. Nasby told Adams that Banks told others that Nasby killed Beasley and Nasby wanted Adams to kill Banks. *Id.* Adams testified that she went to Banks's home with her cousin and Nasby. *Id.* at 42. While driving to Banks's home, Nasby offered Adams a hammer to kill Banks. *Id.*

Adams testified that she hit and kicked Banks. *Id.* at 43. While driving away after beating up Banks, Nasby told Adams that she should have killed Banks. *Id*. On August 4, 1998, Nasby called Adams while he was in custody. Adams went to the police and provided a statement that Von Lewis killed Beasley. *Id.* at 44. After the police questioned her about the fight with Banks, Adams told the police that Nasby told her that Von Lewis killed Beasley. *Id*. Adams testified that she was charged with first degree kidnapping, intimidating a witness, and battery with intent to commit a crime. *Id*. at 45. Adams agreed to testify and in exchange she would receive a lesser misdemeanor battery charge. *Id*.

An individual name John Holmes ("Holmes") testified that he was friends with Beasley. *Id.* at 53. Holmes was in a group called Crazy Young Niggers with Beasley, which ultimately joined with the L.A. Crazy Riders group. *Id*. Holmes was in custody at the same time as Nasby. *Id*. at 54. Holmes discussed Beasley's death with Nasby. *Id*. Holmes testified that Nasby said that he killed Beasley because Nasby believed Beasley was trying to become the leader of the group. *Id*. at 55. Holmes also testified that he reported to the police that Nasby confessed that he killed Beasley. *Id*.

Detective James Buczek investigated Beasley's homicide along with his partner Detective Thomas Thowsen. ECF No. 133-2 at 37–38. Detective Buczek testified that Banks informed him of her phone call with Bradley wherein Bradley relayed that Nasby shot Beasley. *Id.* After speaking to Bradley, Detective Buczek prepared and executed a search warrant on Nasby's residence. *Id*. at 39. While executing the warrant, Nasby stated to Detective Buczek that "the nine [was] not there," before Detective Buczek mentioned that they were searching for a 9mm handgun. *Id*. at 40. While transporting Nasby to jail, Nasby told Detective Buczek that he would show him where the gun was if he took him back to his house. *Id*. The gun was located underneath Nasby's bed in a bag.

*Id*. Nasby told Detective Buczek that he purchased the gun from Von Lewis after Beasley's death. *Id*. at 41. Nasby also told Detective Buczek that he had touched the weapon, handled the magazine, and touched each individual round of ammunition. *Id*.

Detective Buczek testified that he attempted to locate Von Lewis to no avail. *Id*. at 41–42. After Jeremiah, Tommie, and Jotee clarified that Von Lewis was not present on the night that Beasley died, Detective Buczek eliminated Von Lewis as a suspect. *Id.* at 43.

Detective Thowsen testified that he observed the crime scene and that Beasley was found lying on his back. ECF No. 133-3 at 60. During his investigation, he observed the phone number from Banks's caller identification machine when she informed him that Nasby called her. *Id.* at 61. He verified that the number was placed from the Clark County Detention Center, where Nasby was in custody. *Id*.

Multiple crime scene analysts, including a latent print examiner and firearm examiner, testified. Kelly Neil ("Neil") testified that he responded to the crime scene and observed hundreds of expended cartridge cases lying on the ground because it was a popular area for target practice. ECF No. 133-1 at 8. Four cartridge cases appeared shiny, clean, and like they had not been there for a long period of time because the cartridge cases were not corroded. *Id*. Three 9mm cartridge cases were near the victim's head and one .45 caliber cartridge case was towards the victim's feet. *Id*. at 9. Neil also recovered Winston brand cigarette butts that were near the victim. *Id*. at 9.

Randy McPhail ("McPhail") testified that he was present during the execution of the search warrant at Nasby's house. ECF No. 133-2 at 20. During execution of the search warrant, he located a bag containing a 9mm handgun and two empty magazines. *Id*. The serial number on the handgun ultimately allowed law enforcement to determine that the handgun was reported stolen from North Las Vegas. *Id.* at 23. McPhail also located and impounded seven pairs of shoes from Nasby's bedroom and recovered two brands of cigarette butts, Kool, Benson & Hedges and a generic brand, from the bedroom. *Id*. at 20–21.

Torrey Johnson testified that he examined the four expended cartridge cases that were recovered from the crime scene. ECF No. 133-3 at 7. He determined that three of the four cartridges were the correct caliber to be fired from the 9mm handgun recovered from Nasby's house, but he

could not positively conclude that they were fired from the handgun. *Id*. He testified that based on the information from the medical examiner, it was his opinion that the 9mm handgun was the murder weapon. *Id*. at 9.

Dr. Robert Jordan is a medical examiner who performed the autopsy on Beasley. ECF No. 133-1 at 43. Dr. Jordan identified three bullet wounds: an entrance bullet wound above the left eye that had no corresponding exit; an entrance bullet wound on the right back; and an exit bullet wound on the right chest. *Id*. at 44. He recovered projectile fragments from the skull, but none from the chest wound. *Id*. Dr. Jordan did not detect any scorching of the skin around the wound. *Id*. at 48.

Fred Boyd, a latent print examiner, reviewed the handgun, magazine, and photographs of footwear impressions. ECF No. 133-2 at 30. Boyd was unable to locate prints on the handgun or magazine. *Id*. at 31. After comparing the footwear to the impressions, he determined that the seven pairs of shoes recovered from Nasby's bedroom did not make the two impressions recovered at the crime scene. *Id*. at 33.

Based on this evidence, a jury found Nasby guilty.

## II.    PROCEDURAL HISTORY

Joseph S. Sciscento, Esq. and Fredrick A. Santacroce, Esq. served as appointed counsel and represented Nasby at trial. After sentencing, Mr. Sciscento informed the state district court of a conflict of interest related to Nasby's appeal because Mr. Sciscento, prior to trial, accepted and began employment with the Special Public Defender's Office, an office that represented one of Nasby's co-defendants who had testified against Nasby at trial. ECF No. 176 at 2. The state district court granted Mr. Sciscento's motion to withdraw and appointed Mr. Santacroce to represent Nasby on appeal.

The state court entered a judgment of conviction in December 1999. ECF No. 134-4. Nasby appealed. ECF No. 134-5 at 20–24. The Nevada Supreme Court affirmed Nasby's conviction. ECF No. 134-6. In January 2002, Nasby filed a state petition for writ of habeas corpus ("state petition"). ECF No. 134-7. Among other *pro se* claims, Nasby argued his due process rights were violated when the state court gave the jury an erroneous malice instruction combined with a problematic

reasonable doubt instruction. *Id.* at 9; ECF No. 138-12 at 44–48. He later filed a counseled supplement repeating the same claim. ECF No. 134-8 at 30–33. Following an evidentiary hearing, the state district court denied Nasby's claims finding that trial counsel did not have a conflict of interest and that neither trial nor appellate counsel were ineffective. ECF Nos. 134-9; 139-26 at 4. The state court found that Nasby's claims of prosecutorial misconduct and trial court error were barred by Nev. Rev. Stat. § 34.810(1)(b)(2),[3] and denied all post-conviction relief. ECF No. 139-26 at 3–4, ¶¶ 7–8.

Nasby filed a post-conviction appeal. He claimed that the state court erroneously allowed the introduction of prior bad act evidence and failed to properly instruct the jury on multiple critical issues. ECF No. 135-2 at 5, 28. The supporting argument did not discuss any jury instruction. *Id.* at 28–30. In June 2007, the Nevada Supreme Court affirmed the denial of post-conviction relief. ECF No. 135-3.

Nasby dispatched a *pro se* federal petition to this Court on August 14, 2007. ECF No. 10 ("original petition"). Respondents filed a motion to dismiss. ECF No. 20. The Court denied Respondents' motion to dismiss, granted counsel for Nasby's motion to withdraw, and granted Nasby leave to file an amended petition. ECF No. 24. Nasby filed a notice of no supplemental petition and Respondents filed another motion to dismiss. ECF Nos. 32, 33. The Court granted Respondents' motion to dismiss in part finding Grounds 2(B), 5, 6, and 7 unexhausted. ECF No. 35.

Nasby filed a motion for stay and abeyance to return to state court to exhaust his unexhausted claims. ECF No. 41. The Court denied his motion for stay and abeyance and dismissed his petition with prejudice. ECF No. 42. Nasby filed his second *pro se* state habeas petition in state district court. ECF No. 141-15. The state district court denied his second state habeas petition as procedurally barred and successive.[4] ECF No. 140-3. The Nevada Supreme

---

[3] Nev. Rev. Stat. § 34.810(1)(b)(2) instructs Nevada courts to dismiss a state habeas petition if

> The petitioner's conviction was the result of a trial and the grounds for the petition could have been … [r]aised in a direct appeal or a prior petition for a writ of habeas corpus or postconviction relief … unless the court finds both cause for the failure to present the grounds and actual prejudice to the petitioner.

[4] In January 2016, Nasby filed his fourth state habeas petition, wherein the Nevada appellate court affirmed dismissal.

1    Court affirmed the denial of his second state habeas petition. ECF No. 135-11.

2           On March 9, 2011, Nasby filed a motion for reconsideration in the instant case. ECF No.

3    51. The Court granted Nasby's motion, vacated the order denying Nasby's motion for stay and

4    abeyance, and recalled the judgment dismissing his petition with prejudice. ECF No. 55. Following

5    a stay pending exhaustion of Nasby's unexhausted claims, the Court granted Nasby's motion to

6    reopen. ECF No. 62. Respondents answered the remaining grounds of the petition and Nasby

7    replied. ECF Nos. 67, 74. The Court denied the remaining grounds of the petition. ECF No. 81.

8    Nasby filed a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e) and the Court

9    denied his motion. ECF Nos. 87, 93. Nasby appealed to the Ninth Circuit. ECF No. 83.

10          The Ninth Circuit vacated the Court's dismissal of Nasby's petition, vacated the order

11   denying Nasby's motion to alter or amend judgment, and remanded for review of the pertinent

12   state record. ECF No. 109. The Court instructed Respondents to file the entire state court record,

13   instructed Respondents to answer, and instructed Nasby to reply. ECF No. 113. In April 2019, the

14   Court granted Nasby leave to amend his original petition "to elaborate on his existing claims to

15   the extent they are bare, conclusory, or insufficiently pled or cited." ECF No. 173 at 2. Respondents

16   moved to strike, and the Court granted their motion in part finding Ground 2D time-barred and

17   unexhausted. ECF No. 190.

18   **III.    LEGAL STANDARD**

19               **a.   Review under the Antiterrorism and Effective Death Penalty Act**

20          28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in *habeas corpus*

21   cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

22           An application for a writ of habeas corpus on behalf of a person in custody pursuant
         to the judgment of a State court shall not be granted with respect to any claim that
23           was adjudicated on the merits in State court proceedings unless the adjudication of
         the claim–
24

25

26

27   _____
     (ECF Nos. 135-12, 147-2.) Nasby filed his fifth state habeas petition, which the Nevada appellate court affirmed
28   dismissal. (ECF Nos. 143-37, 148-15.) In January 2019, Nasby filed his sixth state habeas petition, wherein the Nevada
     appellate court affirmed dismissal. (ECF No. 186-2.)

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent under 28 U.S.C. § 2254(d) "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

#### b.  Standard for Evaluating an Ineffective Assistance of Counsel Claim

In *Strickland*, the Supreme Court propounded a two-prong test for the analysis of ineffective-assistance-of-counsel claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts considering an ineffective-assistance-of-counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is

1  not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of

2  the proceeding." *Id.* at 693. Rather, errors must be "so serious as to deprive [Petitioner] of a fair

3  trial, a trial whose result is reliable." *Id*. at 687.

4        Where a state court previously adjudicated the ineffective-assistance-of-counsel claim

5  under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See*

6  *Richter*, 562 U.S. at 104–05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d)

7  are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105;

8  *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks

9  omitted) The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether

10 counsel's actions were reasonable. The question is whether there is any reasonable argument that

11 counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

12     **IV.**    **DISCUSSION**

13       **A. Grounds 1 and 4 – Prosecutorial Misconduct**

14       In Ground 1, Nasby alleges the prosecutor committed prosecutorial misconduct by (A)

15 preventing a material witness from testifying; (B) improperly vouching for the credibility of a

16 state's witness; (C) referring to items not in evidence; (D) misstating the law in closing argument;

17 (E) presenting scripted, false, and conflicting evidence; (F) misleading defense counsel as to the

18 witness list; and (G) committing a *Massiah*[5] error. ECF No. 176 at 5. Nasby repeats his allegation

19 that the prosecutor presented scripted, false, and conflicting evidence in Ground 4. *Id.* at 52.

20       **1. Procedural Default**

21       Respondents argue that the claims alleged in Ground 1 and Ground 4 are procedurally

22 defaulted because Nasby did not present such claims on direct appeal and when presented on

23 appeal of his first state habeas petition, the Nevada Supreme Court found the claims procedurally

24 barred pursuant to Nev. Rev. Stat. § 34.810(1)(b). ECF No. 200 at 36. Nasby argues that his claims

25 alleged in Ground 1 are not procedurally defaulted. Although he acknowledges that the Nevada

26 Supreme Court found his claims procedurally barred pursuant to Nev. Rev. Stat. § 34.810, Nasby

27

28   [5] *Massiah v. United States*, 377 U.S. 201 (1964.)

asserts that he timely alleged ineffective assistance of trial and appellate counsel as cause and prejudice for not raising the issues earlier. ECF No. 207 at 22. He also argues that Nev. Rev. Stat. § 34.810 is not an adequate procedural bar. *Id*. at 23.

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. A petitioner must show "cause for his state-court default of *any* federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). The petitioner has the burden of proving both cause and prejudice. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Coleman*, 501 U.S. at 750.

Adequate cause for a default must be something external to the petitioner and that cannot fairly be attributed to him. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). To show "prejudice," a petitioner must show not merely that errors in the state trial court created a possibility of prejudice but that they worked to the petitioner's actual and substantial disadvantage, infecting his or her entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 170 (1982); *Carrier*, 477 U.S. at 494. If insufficient cause is shown, the court need not address whether the petitioner has shown prejudice. *Smith v. Baldwin*, 510 F.3d 1127, 1147 (9th Cir. 2007).

In certain circumstances counsel's ineffectiveness in failing to properly preserve a habeas claim for review in state court will suffice to show cause. *Edwards*, 529 U.S. at 451 (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)). "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Edwards*, 529 U.S. at 451; *see also Carrier*, 477 U.S. at 489 (an ineffective assistance claim generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default").

However, because there is no constitutional right to counsel in state post-conviction proceedings, an attorney's errors in such proceedings do not establish cause for a procedural default. *Coleman*, 501 U.S. at 753–54. The Supreme Court has carved a narrow exception to this

rule and held that "[i]nadequate assistance of counsel at initial review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 10 (2012). The *Martinez* exception is limited though and cannot excuse the procedural default of a substantive claim of trial-court error, ineffective assistance of appellate counsel, or "attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Martinez*, 566 U.S. at 16–17; *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

Nasby argues that he "timely alleged ineffective assistance of trial and appellate counsel, however, as cause and prejudice for not raising the issues earlier." ECF No. 207 at 22. On appeal of his first state habeas petition, Nasby asserted a claim that "[c]ounsel on direct appeal was likewise ineffective for failure to raise all meritorious issues contained in ***this*** memorandum of law," wherein Nasby asserted his prosecutorial misconduct claims. ECF No. 135-2 at 37 (emphasis in original).

The Nevada Supreme Court ruled, as follows, on the claim that Nasby's appellate counsel was ineffective:

> Nasby also made a general claim that appellate counsel was ineffective "for Failure to raise all meritorious issues contained in this memorandum of law" (emphasis in original). Nasby failed to cite to the record or provide cogent argument or legal authority for how appellate counsel's performance was deficient and prejudiced him.
>
> Nasby also cited numerous instances of alleged prosecutorial misconduct and trial court error. The district court determined that these claims were waived by Nasby's failure to raise them on direct appeal. In an attempt to show good cause for his failure sufficient to overcome this procedural bar, Nasby claimed his trial and appellate counsel were ineffective. "To establish good cause to excuse a procedural default, a defendant must demonstrate that some impediment external to the defense prevented him from complying with the procedural rule that has been violated." Nasby failed to demonstrate that an impediment external to the defense caused his failure to raise these claims earlier.

ECF No. 135-3 at 9.

The Court agrees with the ruling of the Nevada Supreme Court. Nasby failed to show that either trial or appellate counsel committed a constitutional violation by providing ineffective assistance of counsel. Nasby has not shown that his allegations of prosecutorial misconduct might

conceivably have affected the outcome of his trial. Nor is there a showing of a reasonable probability that, but for appellate counsel's alleged errors, the result of the appeal would have been different. Thus, ineffective assistance of counsel cannot serve as cause for the procedural default of the claims in Ground 1.

The Court denies Nasby habeas corpus relief with respect to Ground 1 as those claims are barred by the procedural default doctrine.

### 2.  Adequate and Independent

The Ninth Circuit has held the application of Nev. Rev. Stat. § 34.726 and Nev. Rev. Stat. § 34.800 to be independent and adequate grounds for procedural default. *Moran,* 80 F.3d at 1268–70; *Valerio v. Crawford,* 306 F.3d 742, 778 (9th Cir.2002); *Ybarra v. McDaniel,* 656 F.3d 984, 990 (9th Cir. 2011); *Loveland v. Hatcher,* 231 F.3d 640, 643 (9th Cir. 2000). The Ninth Circuit also has held that, at least in non-capital cases, application of the procedural bar in Nev. Rev. Stat. § 34.810 is an independent and adequate state ground. *Vang v. Nevada,* 329 F.3d 1069, 1073–75 (9th Cir. 2003); *Bargas v. Burns,* 179 F.3d 1207, 1210–12 (9th Cir. 1999). Nasby argues, however, that the Nev. Rev. Stat. § 34.810 bar is inadequate in this case because it has not been consistently applied. ECF No. 176 at 25–26.

"In order for a state procedural rule to preclude federal review, the rule must be 'firmly established and regularly followed.'" *Collier*, 408 F.3d at 1284 (quoting *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991)). "The Ninth Circuit has elaborated that a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default." *Collier*, 408 F.3d at 1284 (quotation omitted). "If a state procedural rule is not well-established before a petitioner supposedly breaks the rule, then the rule cannot prevent federal review of the petitioner's federal claims." *Collier*, 408 F.3d at 1284. "Although the state is not required to articulate every permutation of every rule, a rule held generally adequate can be deemed inadequate as applied to particular unique circumstances." *Collier*, 408 F.3d at 1284 (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002); *Bargas v. Burns*, 179 F.3d 1207, 1213 (9th Cir. 1999) (internal quotation omitted)). "Once a petitioner has demonstrated the inadequacy of a rule, the state bears the ultimate burden of proving the rule bars federal review." *Collier*, 408 F.3d at 1284 (citing *Bennett v. Mueller*, 322

F.3d 573, 585–86 (9th Cir. 2003)).

Nasby's arguments do not place the adequacy of Nev. Rev. Stat. § 34.810 at issue so as to shift the burden to Respondents. Accordingly, the Court concludes the provision was a "clear, consistently applied, and well-established" procedural rule at the time of Nasby's defaults.

### 3. Merits Determination

Even if Nasby's claims were not procedurally defaulted, the Court would nonetheless deny relief in the alternative on *de novo* review. Prosecutorial misconduct warrants federal habeas relief if the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotation marks omitted). A defendant's constitutional right to due process of law is violated if the prosecutor's misconduct renders a trial "fundamentally unfair." *Id.* at 181–83; *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). A court reviews claims of prosecutorial misconduct "on the merits, examining the entire proceedings to determine whether the prosecutor's [conduct] so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted); *see also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Turner v. Calderon*, 281 F.3d 851, 868 (9th Cir. 2002). If there is constitutional error, a harmless error analysis is applied; the error warrants relief if it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993) (quotation omitted); *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012).

### a. Ground 1A – Interference with Material Witness

In Ground 1A, Nasby alleges that prosecution interfered with a material witness, Colleen Warner ("Warner"), when the prosecutor showed Warner a letter allegedly written by Nasby that "said some harsh things" about Warner and caused her to refuse to testify for the defense. ECF No. 176 at 5–6. Respondents argue that the allegations do not rise to the level of misconduct and that the state district court did not issue an order or expressly prohibit the prosecutor from showing the letter to Warner. ECF No. 200 at 44.

The record reflects that prosecution did not harass or intimidate the witness to discourage her from testifying. Further, the prosecution presented strong evidence through testimony of multiple witnesses that Nasby shot Beasley. *See Darden,* 477 U.S. at 181–82 (analyzing a claim that the prosecutor's argument violated due process by considering the strength of the evidence against the defendant). Considering witness testimony that Nasby confessed to shooting Beasley as well as testimony corroborating the events of the night of Beasley's murder, including the manner of how he was shot, the Court cannot conclude that the actions of the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden,* 477 U.S. at 181–82.

### b.  Ground 1B – Vouching for Witness Testimony

In Ground 1B, Nasby alleges that the prosecutor vouched for the testimony of the other co-defendants by stating "they told the truth and the truth came out." ECF Nos. 176 at 10; ECF No. 119-1 at 19. Respondents argue that the prosecutor's single reference did not amount to improper vouching because the prosecutor did not interject his opinion of truthfulness and did not invoke the authority of the state. ECF No. 200 at 47.

"Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993). Here, the State contended in closing argument that "the truth coincides with each other," and argued that the testimony of the detective, crime scene analysts, and the coroner's office corroborated the witness testimony. ECF No. 119-1 at 19. The State did not personally assure witness veracity or suggest that it had extra-record facts to support the testimony. *See Necoechea*, 986 F.3d at 1279 ("The prosecutor here argued that [the witness] told the truth because, if she were lying, she would have done a better job. This is simply an inference from evidence in the record. It is not . . . a reference to extra-record facts or a personal guarantee of [the witness]'s veracity. The prosecutor merely argued that [the witness] was telling the truth, an argument the prosecutor had to make in order to convict [the defendant]. These statements do not imply that the government is assuring [the witness]'s veracity, and do not reflect the prosecutor's personal beliefs.").

Accordingly, Nasby is denied habeas relief for Ground 1B.

### c. Ground 1C – Reference to Facts Not in Evidence

In Ground 1C, Nasby alleges that the State referred to facts not in evidence when the prosecutor stated during closing argument that Tommie and Jotee did not expressly implicate Nasby because they did not want to be labeled as snitches. ECF Nos. 207 at 28–29; ECF No. 119-1 at 19. Respondents argue that the prosecutor properly urged the jury to use their common sense, made an argument for the jury to consider, and urged the jury to make reasonable inferences regarding the credibility of the witness testimony. ECF No. 200 at 49.

In pertinent part, the State provided in closing argument as follows:

> That's the motivating thing about these guys, the Burnside brothers. Here are two guys who are in prison. They pled guilty to accessory to murder just like Deskin and they were sentenced before him and brought down here for the sole purpose of trying to dispel this notion that the defendant kept on throwing at you that Sugar Bear may have been there. Sugar Bear was not there, you know, but that's why they were brought down.

> And just as that Instruction No. 29 talks about common sense, use your common sense. These guys didn't want to flat out in court say, hey, it was the defendant who did this. I saw him shoot. No, they said I was there, the Burnside brothers were there, Jerimiah Deskin was there, Michael Beasley was there, and the defendant and, as to both of those witnesses, did you shoot Michael? No. Did your brother shoot Michael? No. Did Jerimiah shoot Michael? No. The coroner ruled out suicide. So obviously Michael didn't shoot himself. Who is the last person that's left over there by the defendant. Use your common sense, deduce from that. Do you think that those guys, who are in prison, want to come and take the witness stand and just sing like a bird? No.

ECF No. 119-1 at 19.

This, however, does not did not render the trial "fundamentally unfair." *Darden*, 477 U.S. at 181–82. The prosecutor did not suggest that he had information not available to the jury, nor did he make an argument based on his opinion. The prosecutor made the argument based on evidence – the testimony of the co-defendants and that they were in custody pursuant to plea agreements – and argued that the jury should use their common sense regarding the Burnside brothers' testimony. The Court finds that Nasby has not identified improper argument that could have so infected his trial with unfairness as to make the resulting conviction a denial of due process. Thus, the Court denies relief with respect to Ground 1C.

///

#### d. Ground 1D – Misstating Law

In Ground 1D, Nasby alleges that the State misstated the law in closing argument regarding the corroboration requirement in Nev. Rev. Stat. § 175.291 and stated that the accomplices corroborated each other. ECF No. 176 at 12. Nasby argues that there no physical evidence tied Nasby to the crime, and the prosecutor repeatedly stated that corroboration came from the accomplices. *Id*. Respondents argue that the Nevada Supreme Court already rejected Nasby's related state law claim and that the State argued all the evidence corroborated the accomplice testimony. ECF No. 200 at 52–53.

Nasby's argument is belied by the record. The State presented evidence corroborating the accomplices' testimony. For example, Bradley testified that Nasby told her that he had shot Beasley three times while out in the desert. ECF No. 133-2 at 13. Holmes testified that Nasby confessed to killing Beasley because Nasby believed Beasley was trying to become the leader of the group. ECF No. 133-3 at 55. And the detectives recovered a 9mm handgun from Nasby's bedroom and there was expert testimony that the firearm recovered from his bedroom was the murder weapon. ECF Nos. 133-2 at 20; 133-3 at 9.

The Court denies relief with respect to Ground 1D.

#### e. Grounds 1E and 4 – Presenting False, Scripted, or Coerced Testimony

In Grounds 1E and 4, Nasby alleges that the State presented false, scripted, or coerced testimony. ECF No. 176 at 13, 52. He asserts that the prosecution confused the jury as to the elements of conspiracy to commit murder and attempted to bolster Jeremiah's credibility by arguing that Jeremiah admitted to culpability of the crime of accessory to murder and "not the actual puller of the trigger." *Id*. at 14. He further asserts that the State asked Tommie and Jotee scripted questions in violation of Nev. Rev. Stat. § 174.061[6] to avoid asking them specifically whether Nasby killed Beasley. *Id*. at 15. Respondents argue that the prosecutor's statement that

---

[6] Nev. Rev. Stat. § 174.061(2) provides as follows:

  A prosecuting attorney shall not enter into an agreement with a defendant which:
  (a) Limits the testimony of the defendant to a predetermined formula.
  (b) Is contingent on the testimony of the defendant contributing to a specified conclusion.

Jeremiah "pled guilty to accessory to murder, as an accessory to this case, not the actual puller of the trigger, but an accessory" was not false or misleading. ECF No. 200 at 54. Further, Tommie and Jotee did not enter guilty plea agreements that limited their testimony. *Id*. at 55.

Based on a review of the record, Jeremiah's testimony and/or the prosecutor's comments regarding Jeremiah's guilty plea are not false or misleading. Jeremiah entered into a guilty plea agreement wherein he pled guilty to the crime of accessory to murder. ECF No. 136-8. Further, the state court provided a jury instruction as to the elements of conspiracy. ECF No. 134-2 at 6. In addition, Nasby fails to show that Tommie or Jotee's testimony was false or scripted such that it rendered the trial "fundamentally unfair." Defense counsel was permitted to cross-examine and elicit testimony regarding Nasby's involvement in Beasley's death as well as the previous statements of the witnesses. To the extent Nasby bases his claims on alleged violations of state law, they are not valid claims for federal habeas relief. *See Pully v. Harris,* 465 U.S. 37, 41 (1984).

The Court denies habeas relief with respect to Ground 1E and 4.

### f.   Ground 1F – Withholding Information

In Ground 1F, Nasby alleges that the State lacked candor regarding the witness list and withheld material information in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), because the State listed Von Lewis as a witness and included an ID number to indicate he was incarcerated. ECF No. 176 at 15. The State, however, had no intention of calling Von Lewis as a witness to the detriment of the defense because Von Lewis would have testified that he owned the firearm and about the nature of his relationship with Beasley. *Id*. Respondents argue that Von Lewis was not a material witness because Detective Buczek testified that Von Lewis was not a suspect and because Jeremiah and Jotee testified that Von Lewis was not present on the night of the shooting. ECF No. 200 at 58.

Nasby's allegations do not establish prosecutorial misconduct or a *Brady* violation because Nasby knew what Von Lewis would have allegedly testified to irrespective of whether the State called him as a witness. *See Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006) (rejecting *Brady* claim where "[p]etitioner possessed the salient facts regarding the existence of the records that he claims were withheld"). The Court denies habeas relief with respect to Ground 1F.

### g.  Ground 1G – *Massiah* Error

In Ground 1G, Nasby alleges that the State committed error in violation of *Massiah v. United States*, 377 U.S. 201, 207 (1964), because Holmes testified that Nasby confessed to him when Holmes acted at the behest of the State. ECF No. 176 at 16–17. Nasby asserts that in opening statement the prosecution referred to a letter allegedly written by Nasby which requested that Holmes find a witness to memorize the letter and testify on Nasby's behalf. *Id*. Nasby claims that Holmes had been working with law enforcement prior to Nasby giving him the letter. *Id.* Respondents argue that Nasby's confession to Holmes occurred before Holmes spoke to law enforcement and that his testimony at trial was limited to Nasby's confession. ECF No. 200 at 60–61.

*Massiah* established that "a criminal defendant's right to counsel is violated when a state agent deliberately elicits an incriminating statement outside the presence of the defendant's counsel." *Fairbanks v. Ayers*, 632 F.3d 612, 622 (9th Cir. 2011). "To establish a *Massiah* violation, a defendant must demonstrate both that the informant was acting as a government agent and that the informant deliberately elicited incriminating statements." *Id.* (citing *United States v. Henry*, 447 U.S. 264, 270 (1980)). Further, the "defendant must show that he suffered prejudice at trial as a result of evidence obtained from interrogation outside the presence of counsel." *United States v. Bagley*, 641 F.2d 1235, 1238 (9th Cir. 1981); *see also Payton v. Davis*, 906 F.3d 812, 822 (9th Cir. 2018).

Prior to trial, Holmes testified to the state court that he contacted police after Nasby confessed to killing Beasley. ECF No. 133-3. Accordingly, Holmes's testimony regarding Nasby's confession did not violate *Massiah*.

During opening statements, the prosecutor stated as follows:

> You will find that the defendant eventually gives a three page, handwritten letter to John Holmes, the guy he just eventually confesses to, and what it is, it says: A statement to the girl. And what the defendant wanted John Holmes to do is go find a girl, some girl out there, who will read this story, that he just wrote three pages of, and to memorize it and come in court and testify in his behal.

ECF No. 132-6 at 50.

At the time of opening statements, the trial court had not ruled on the admissibility of the

letter. *Id*. at 53. The trial court later determined that the letter would not be admissible at trial. ECF No. 133-3 at 52. Although prosecution referred to the letter in opening statement, Holmes's testimony was limited to Nasby's confession. In light of the substantial evidence supporting Nasby's conviction, prosecution's reference to the letter did not "infect the trial with unfairness as to make the resulting conviction a denial of due process." *See Darden,* 477 U.S. at 181–82. Accordingly, the Court denies habeas relief with respect to Ground 1G.

### B.  Ground 2A

In Ground 2A, Nasby alleges that the trial court erroneously delayed ruling on the letter allegedly written by Nasby that showed evidence of other bad acts in violation of his rights to due process, equal protection, and a constitutionally sound sentence under the Fifth, Sixth, Eighth, and Fourteenth Amendments. ECF No. 176 at 27. Nasby asserts that although the trial court ruled the letter was inadmissible at trial, the damage was already done as the jury heard the prosecutor's statements during opening statements. *Id.*

Respondents argue that Ground 2A is procedurally defaulted to the extent Nasby raises a due process claim pursuant to the Fifth, Sixth, and Fourteenth Amendments. ECF No. 200 at 64. On direct appeal, Nasby alleged the trial court erred in denying his motion for mistrial based on the State's reference to the letter, but Nasby did not federalize his claim. *Id*. Further, in his first state habeas appeal, Respondents argue that Nasby did not federalize his claims based on equal protection, constitutionally sound sentence, or the Eighth Amendment. The Nevada Supreme Court dismissed the claim for failure to raise it on direct appeal pursuant to Nev. Rev. Stat. § 34.810. *Id*. at 65; *see also* ECF No. 135-3 at 9. Other than his reference to his arguments made regarding procedural default as to Ground 1, Nasby does not make a separate argument for cause and prejudice to overcome procedural default of Ground 2. ECF No. 176 at 65.

To "fairly present" a federal claim to the state courts, a petitioner must have alerted the state courts to the fact that he was asserting a claim under the United States Constitution. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995); *Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005) ("[T]o alert the state court, a petitioner must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional

analysis.")[7]; *see also Castillo v. McFadden*, 399 F.3d 993, 1002 (9th Cir. 2005) (holding that exhaustion demands more than a citation to a general constitutional provision, detached from any articulation of the underlying federal legal theory). A federal claim is not exhausted by a petitioner's mention, in passing, of a broad constitutional concept, such as due process. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (holding that "general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion").

The Court agrees with Respondent that the portion of Ground 2A raising a due process claim pursuant to the Fifth, Sixth, and Fourteenth Amendments is procedurally defaulted. The Ninth Circuit has held that, at least in non-capital cases, application of the procedural bar in Nev. Rev. Stat. § 34.810 is an independent and adequate state ground. *Vang v. Nevada,* 329 F.3d 1069, 1073–75 (9th Cir. 2003); *Bargas v. Burns,* 179 F.3d 1207, 1210–12 (9th Cir.1999). To the extent Nasby argues he can show cause and prejudice, he fails to make a showing of a reasonable probability that, but for appellate counsel's alleged errors, the result of the appeal would have been different. Although Nasby's claim on direct appeal was based on state law, the Nevada Supreme Court found no likelihood that the reference to the letter during opening statement was unfairly prejudicial. ECF No. 134-6 at 5–7. There were no other references to the letter at trial and the jury was instructed that counsel's arguments are not evidence. ECF No. 119-2 at 28. Thus, the Court denies habeas corpus relief with respect to Ground 2A.

The Court also agrees with Respondents that the remaining portion of Ground 2A based on equal protection, constitutionally sound sentence, and the Eighth Amendment were not fairly presented to the state appellate court for purposes of exhaustion requirements for federal habeas review. Nasby makes no argument as to this portion of Ground 2A. Accordingly, the remaining portion of Ground 2A based on equal protection, constitutionally sound sentence, and the Eighth Amendment is dismissed as unexhausted.

---

[7] *See also Peterson v. Lampert*, 319 F.3d 1153, 1157–58 (9th Cir. 2003) (en banc) (holding that a citation to a state court case that provides a federal analysis can "serve[ ] the same purpose as a federal case analyzing such an issue"); *Lyons v. Crawford*, 232 F.3d 666, 670 (9th Cir.2000) (noting that "petitioner must have either referenced specific provisions of the federal constitution or statutes or cited to federal case law"), *as modified by* 247 F.3d 904 (9th Cir. 2001).

### C.  Ground 2B – Bad Acts Evidence

In Ground 2B, Nasby alleges that the trial court erroneously allowed the introduction of bad acts evidence when Brittney Adams testified that Nasby offered Adams one of his guns when they were on the way to Tanesha Banks's house. ECF No. 176 at 28–29. He further asserts that Detective Thowsen testified that Nasby tried to intimidate Banks over the phone but could not prove conclusively that it was Nasby who called. *Id*. Respondents argue that Ground 2B is procedurally defaulted because Nasby did not raise this claim on direct appeal and the Nevada Supreme Court affirmed dismissal for failure to raise it on direct appeal pursuant to Nev. Rev. Stat. § 34.810(1)(b). ECF No. 200 at 70. Respondents further argue that Nasby did not federalize his claim as to equal protection, constitutionally sound sentence, or the Eighth Amendment. *Id*.

Ground 2B is procedurally defaulted. To the extent Nasby argues he can show cause and prejudice, he fails to show that his allegation that the trial court erroneously allowed introduction of bad acts evidence might conceivably have affected the outcome of his trial beyond conclusory allegations. Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions. Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must "be of such quality as necessarily prevents a fair trial." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991). Nasby cannot show that he was prejudiced because admission of evidence regarding Adams's and Banks's testimony did not render the trial fundamentally unfair. The Court denies habeas corpus relief with respect to Ground 2B.

The Court further agrees that the remaining portion of Ground 2B based on equal protection, constitutionally sound sentence, and the Eighth Amendment were not fairly presented to the state appellate court for purposes of exhaustion requirements for federal habeas review. Nasby makes no argument as to this portion of Ground 2B. Accordingly, the remaining portion of Ground 2B based on equal protection, constitutionally sound sentence, and the Eighth Amendment is dismissed as unexhausted.

///

### D.  Ground 2C and Ground 6 – Accomplice Instruction

In Grounds 2C and 6, Nasby alleges that the trial court failed to give an accomplice instruction in violation of his constitutional rights. ECF No. 176 at 30. Respondents argue that Nasby failed to federalize his claim on direct appeal. ECF No. 200 at 74. Nasby argues that Ground 6 is exhausted because he relied on *Sheriff v. Acuna*, 819 P.2d 197, 203 (Nev. 1991), which refers to rules prevailing in both state and federal courts and safeguarding a defendant's right to a fair trial. Citation to state case law that applies federal constitutional principles will suffice for exhaustion purposes. *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc). The Court concludes that Nasby sufficiently referenced case law to alert the Nevada Appellate Courts that he asserted violations of his federal rights.

On direct appeal, the Nevada Supreme Court held as follows:

> Next, Nasby contends that the standard credibility instruction that was given to the jury was insufficient. Nasby argues that the jury must be given a cautionary instruction when the State uses accomplice testimony in its case in chief.
>
> Failure to make a timely objection during trial waives the appellant's right to raise the issue on appeal. See Pray v. State, 114 Nev. 455, 959 P.2d 530 (1998). However, this court "may address plain error and constitutional error sua sponte." Sterling v. State, 108 Nev. 391, 394, 834 P.2d 400, 402 (1992). Appellant Nasby waived this issue by failing to make a timely objection before the trial court. We conclude that it was not plain or constitutional error for the trial court to fail to give a cautionary instruction and therefore reject Nasby's argument regarding this issue.

ECF No. 119-6 at 5.

The Nevada Supreme Court's rejection of Nasby's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court. The Supreme Court has never held that a state trial court commits federal constitutional error if it fails to provide cautionary instructions regarding accomplice testimony. On the contrary, the Supreme Court has indicated that the Constitution does not require such instructions. Specifically, the Supreme Court has held that the uncorroborated testimony of an accomplice is sufficient to sustain a conviction. *See United States v. Augenblick*, 393 U.S. 348, 352 (1969) ("When we look at the requirements of procedural due process, the use of accomplice testimony is not catalogued with constitutional restrictions."); *see also United States v. Fritts,* 505 F.2d 168, 169 (9th Cir. 1974) (holding that a federal trial court's failure to *sua*

*sponte* give cautionary instruction on accomplice testimony did not warrant reversal). The fact that Nevada law may require accomplice testimony to be corroborated does not mean that Nasby had a federal constitutional right to jury instructions regarding accomplice testimony. *See Laboa v. Calderon,* 224 F.3d 972, 979 (9th Cir. 2000).

Even assuming that the trial court committed federal constitutional error in failing to instruct the jury regarding accomplice testimony—and this Court concludes that it did not—the error would not warrant habeas corpus relief, because it did not have a substantial and injurious impact on the jury's verdict. *See Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993) (The prejudicial impact of a constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict."). Ample evidence presented at trial corroborated the co-defendants' testimony. Nasby confessed to two witnesses who were not co-defendants or accomplices. ECF No. 133-2 at 13, 53. Expert witnesses determined that the cartridges recovered from the crime scene were from a 9 mm handgun and detectives recovered a 9mm handgun from Nasby's bedroom. ECF Nos. 133-2 at 20; ECF No. 133-3 at 7. Moreover, the co-defendants' credibility was explored on both direct and cross-examination. Considering the evidence presented at trial, the Court concludes that the trial court's refusal to give accomplice testimony instructions did not have a substantial and injurious effect or influence in determining the jury's verdict.

The Nevada Supreme Court's denial of the claims asserted in Grounds 2C and 6 was not contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Therefore, the Court denies habeas relief with respect to these claims.

### E. Ground 3A – Failure to Call Witnesses

In Ground 3A, Nasby alleges that trial counsel rendered ineffective assistance for failure to call any witnesses at trial. ECF No. 176 at 34–36. He asserts that trial counsel did not call alibi witnesses that could have testified to Nasby's whereabouts during the time the crime occurred. *Id*. Nasby argues that trial counsel was deficient because they did not call alibi witnesses based on a letter that allegedly contained evidence of witness coaching, which the trial court described as

"innocuous." ECF No. 207 at 51.

To prevail on the ineffective assistance claim, Nasby must show his trial counsel acted deficiently and "a reasonable probability that, but for counsel's [deficiencies], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, the Court need not "address both components of the inquiry" if Petitioner "makes an insufficient showing on one." *Id*. at 697.

The Nevada Supreme Court held:

> Nasby claimed that trial counsel, Joseph Sciscento and Frederick Santacroce, were ineffective for failing to call three witnesses whom Nasby claimed would have given him an alibi. [fn 6] At the evidentiary hearing, counsel testified that they were prepared to call these witnesses at trial, but before trial they were given a letter Nasby had written from jail that suggested Nasby was concocting an alibi. Counsel testified that they suspected the witnesses might give false testimony if called, and they could not ethically call them. Nasby also claimed counsel were ineffective for failing to re-interview these witnesses to investigate whether he in fact concocted the alibi. Nasby failed to demonstrate that counsel's re-interview of the alibi witnesses, whom Mr. Sciscento testified he had previously interviewed, would have negated counsel's concerns. We conclude the district court did not err in denying this claim.
>
> > [fn6] We note that an affidavit submitted by one of the witnesses, Colleen Warner, indicates that she was present on the first day of trial and told counsel she would not testify on Nasby's behalf.

ECF No. 120-4 at 4. The Nevada Supreme Court's rejection of Nasby's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*.

The court reasonably determined that Nasby failed to demonstrate that his counsel was deficient for failing to call alibi witnesses at trial. As noted by the Nevada Supreme Court, trial counsel testified that they became aware of a letter that indicated the alibi was concocted. Counsel would not put on perjured testimony. ECF No. 134-9 at 8. Counsel further testified that, "[h]ad we put those witnesses on and then the State would have come back and impeached the whole credibility of Mr. Nasby through intercepted communications, we wouldn't have had a chance to offer any other defense. It would be game over." *Id*. at 10–11. Counsel further testified that the most plausible defense was suggesting to the jury that another individual committed the murder. *Id*. at 11. Counsel's decision not to call witnesses at trial does not fall "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Although the Nevada Supreme Court held Petitioner failed to demonstrate both deficiency and resulting prejudice, Petitioner has not sufficiently demonstrated here his counsel's "representation fell below an objective standard of reasonableness." *Id.* Therefore, the *Strickland* inquiry need not continue, and the Court denies federal habeas relief for Ground 3A.

### F.  Ground 3B – Failure to Call Key Witness

In Ground 3B, Nasby alleges that trial counsel rendered ineffective assistance for failure to call a key witness, Porsche Nichols ("Nichols"), who would have testified that no witness intimidation occurred to rebut Adams's testimony. ECF No. 176 at 36–37. He asserts that Adams's testimony was highly prejudicial and if Nichols testified, the testimony would have likely changed the outcome of the proceedings. *Id.* Nasby also asserts that counsel failed to locate Madison Jones and Michelle McKinnon who would have testified that they saw Von Lewis put a 9mm handgun to Beasley's head and threatened to kill him. *Id.*

The Nevada Supreme Court held:

> Nasby also claimed that trial counsel were ineffective for failing to call Porsche Nichols to contradict Brittney Adams' testimony. Adams testified that Nasby wanted her to kill Tanesha Banks, who apparently was blaming Nasby for the murder. Our review of the record, including a transcript of a police interview of Nichols, reveals that Nichols' statement, while not as thorough as Adams' testimony, did not contradict it. Nasby also claimed counsel should have located and called Madison Jones and Michelle McKinrion to testify that Charles Von Lewis threaten [sic] the victim with a gun. Nasby's defense was that Von Lewis, not Nasby was the killer. Nasby's assertion that these witnesses were available to trial counsel and would have so testified has no factual support in the record. [fn7] We conclude that the district court did not err in rejecting these claims.
>
> > [fn7] See Sparks v. State, 96 Nev. 26, 29, 604 P.2d 802, 804 (1980) (noting that facts stated in a party's brief will not compensate for a deficiency in the record.)

ECF No. 120-4 at 5. The Nevada Supreme Court's rejection of Nasby's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

Nasby failed to demonstrate a basis for objectively reasonable counsel to call Nichols to testify for the purpose of rebutting Adams's testimony. The Nevada Supreme Court noted that its review of the record, including Nichols's police interview, reveals that Nichols' statement did not contradict Adams's testimony. *See* ECF No. 135-7. During her police interview, Nichols stated

that she went to a girl's house with Adams and Nasby. *Id*. at 5–6. Adams hit the girl while Nasby stayed in the car, then Nasby moved to the driver's seat, and they drove away. *Id*. During the fight, Nichols heard Adams mention the name of the friend who got killed. *Id*. at 9. Further, Nasby did not demonstrate that Madison Jones or Michelle McKinnon were available or that they would have testified. At the evidentiary hearing, counsel testified that he interviewed the women Nasby provided as potential alibi witnesses. ECF No. 134-9 at 26. As noted by the Nevada Supreme Court, there is no evidence in the record which establishes that Jones or McKinnon would testify in Nasby's trial. It was reasonable to find Nasby had not shown his counsel was deficient. Accordingly, the Court denies federal habeas relief for Ground 3B.

### G.  Ground 3C – Conflict of Interest

In Ground 3C, Nasby alleges that trial counsel rendered ineffective assistance due to a conflict of interest. ECF No. 176 at 43. Trial counsel, Mr. Sciscento, accepted employment with the Special Public Defender's office, who represented co-defendants Tommie and Jotee. Mr. Sciscento did not disclose that he accepted employment with the Special Public Defendant's Office to the trial court until after trial and sentencing, and he did not disclose his employment to Nasby. *Id.*

The Nevada Supreme Court held:

> Nasby also claimed that trial counsel Joseph Sciscento was ineffective for representing him despite an alleged conflict of interest. Specifically, Nasby argued that a conflict arose when Sciscento accepted a position with the Special Public Defender, who represented one of Nasby's alleged coconspirators. Evidentiary hearing testimony established that Mr. Sciscento's agreement with the Special Public Defender allowed him to finish his existing cases. Mr. Sciscento testified that his files on this matter were kept in his private office, not at the Special Public Defender's office, that he performed his work on this case in his private office, and that he did not discuss this case with anyone at the Special Public Defender's office. The district court concluded that Mr. Sciscento did not have a conflict of interest. We conclude the district court did not err in rejecting this claim.

ECF No. 120-4 at 5–6. The Nevada Supreme Court's ruling was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

Effective assistance of counsel "includes a right to conflict-free counsel." *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995). To establish a violation of the Sixth Amendment, a

defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). However, until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. *Id.* If counsel actively represents multiple defendants with conflicting interests, such that an actual conflict adversely affects counsel's performance, prejudice is presumed. *See Cuyler*, 446 U.S. at 349–50. However, the Supreme Court has instructed that *Cuyler* "does not clearly establish, or indeed even support . . . expansive application" of that rule to cases outside the context of multiple concurrent representation. *Mickens v. Taylor*, 535 U.S. 162, 175 (2002). The presumption of prejudice only applies in the context of representation of multiple clients because of the "high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice." *Id*.

The Nevada Supreme Court's determination that an actual conflict of interest did not exist was reasonable. At the evidentiary hearing, counsel testified to the following facts. Mr. Sciscento sought Mr. Santacroce's assistance in part to allow for maintenance of separate files in his private practice office while he transitioned to practice for the Special Public Defender's Office. ECF No. 134-9 at 23–24. Mr. Sciscento maintained a "Chinese wall" or screened the work he was doing for his private practice and his work for the Special Public Defender's Office. *Id*. He further testified that he never saw the files of co-defendants who were represented by the Special Public Defender's Office. *Id*. at 24. If he spoke to the attorney representing a co-defendant, it was regarding what the co-defendant was going to testify to. *Id*. Mr. Sciscento testified that he did not represent the co-defendants, and they were not his clients. *Id*.

There is no evidence that counsel's performance was adversely affected by his agreement to work for the Special Public Defender's Office while maintaining an ethical wall between his private practice. Nor does evidence demonstrate, or even suggest, some plausible alternative defense strategy or tactic that trial counsel might have pursued but did not or that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. *See United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005). As Nasby has not

demonstrated the existence of an actual conflict, the Court finds the Nevada Supreme Court's denial of this claim was objectively reasonable.

## H. Ground 3D – Failure to Investigate and Dissuading Witness From Testifying

In Ground 3D, Nasby alleges that trial counsel rendered ineffective assistance for failure to investigate and present evidence, including failure to object to the prosecutor dissuading a key defense witness, Colleen Warner, from testifying. ECF No. 176 at 38. Nasby claims that Colleen Warner could have testified as an alibi witness and as to how Nasby came into possession of the gun. *Id.* at 39. In addition, Nasby alleges that the trial counsel failed to introduce evidence of a videotape depicting Von Lewis threatening Beasley with a gun. *Id*.

The Nevada Supreme Court held:

> Nasby next claimed that trial counsel were ineffective for failing to show the jury a videotape of Charles Von Lewis threatening the victim with a gun. At the evidentiary hearing, counsel testified that the videotape also contained images damaging to Nasby, including Nasby waving a gun around and "making comments." The record makes clear that counsel made a tactical decision not to show the videotape in order to avoid potential prejudice to their client. Counsel's tactical decisions are "'virtually unchallengeable absent extraordinary circumstances,'" which are not present here. We conclude the district court did not err in rejecting this claim.

ECF No. 120-4 at 6. The Nevada Supreme Court's rejection of Nasby's claim that trial counsel rendered ineffective assistance for failure to show the videotape of Von Lewis was neither contrary to nor an objectively unreasonable application of *Strickland*.

The Nevada Supreme Court reasonably determined that Nasby failed to demonstrate his trial counsel's investigative decisions and failure to present a videotape of Von Lewis threatening Beasley in support of his defense that Von Lewis killed Beasley was objectively unreasonable. At the evidentiary hearing, counsel testified that the videotape was damaging to Nasby as he was waving around a firearm, rapping, and talking about the gang. Counsel also believed it was preferable to get information about the fight between Von Lewis and Beasley from testimony at trial as opposed to showing the video that had damaging images of Nasby. ECF No. 134-9 at 15–16, 42, 43. Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Counsel

made the determination that the videotape was more damaging to Nasby based on their review of the tape. Counsel's decision not to introduce the videotape does not fall "outside the wide range of professionally competent assistance." *Id*. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*.

The Nevada Supreme Court also held:

> Nasby further claimed that trial counsel were ineffective for not advising the district court that the prosecutor had shown Colleen Warner, one of his alibi witnesses, a letter from Nasby to Crystal Sobrian, in which Nasby disparaged and threatened Warner. Nasby claimed the prosecutor showed Warner the letter in an effort to convince her not to testify on Nasby's behalf. Nasby's claim that the State's action was in violation of a district court order is not supported by the record; the record reveals that before trial the prosecutor suggested he might use the letter in his case in chief. The court said that if he did so, Nasby's comments about Warner should be redacted. The prosecutor said he wanted to present "that information to [Warner] and see how she feels about him at this point," to which the district court responded, "I don't know about that." There was no order from the district court that the information not be disclosed outside the jury's presence. We conclude the district court did not err in rejecting this claim.

ECF No. 120-4 at 7. The Nevada Supreme Court's rejection of Nasby's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

As noted by the Nevada Supreme Court, any assertion that prosecution showed Warner the letter in violation of a district court order is belied by the record. Further, the record does not indicate that trial counsel intended to call Warner as a witness considering counsel's testimony at the evidentiary hearing that they became aware of a letter that indicated the alibi was concocted and counsel would not put on perjured testimony. ECF No. 134-9 at 8. Accordingly, the Nevada Supreme Court reasonably determined that Nasby failed to demonstrate that his counsel was deficient or a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. Nasby is therefore denied federal habeas relief on Ground 3D.

### I.   Ground 3E – Failure to Object to Lack of Accomplice Jury Instruction

In Ground 3E, Nasby alleges trial counsel rendered ineffective assistance for failure to object to the lack of a cautionary accomplice jury instruction. ECF No. 176 at 40. Nasby asserts that the case against Nasby was based on testimony from his co-defendants and the lack of a cautionary accomplice instruction violates due process. *Id*.

The Nevada Supreme Court held:

> Nasby next claimed that trial counsel were ineffective for failing to request an accomplice-testimony instruction and failing to object to the district court's failure to give such an instruction. He failed to support this claim with any citation to the record or relevant legal authority. "It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court." Even if counsel were deficient in this regard, Nasby failed to demonstrate prejudice in light of the fact that two witnesses testified that Nasby confessed to killing the victim and the murder weapon was found in his bedroom. We conclude the district court did not err in rejecting this claim.

ECF No. 120-4 at 7–8. The Nevada Supreme Court's ruling was neither contrary to nor an unreasonable application of clearly established law as determined by the Supreme Court of the United States.

Nasby failed to demonstrate that, but for counsel's failure to object to the trial court's failure to include an accomplice jury instruction, there is a reasonable probability that the outcome of the trial would have been different. As noted by the Nevada Supreme Court, the State presented two witnesses who testified that Nasby confessed to killing Beasley, and the murder weapon was recovered in his bedroom. Further, the co-defendants were subject to cross-examination and their participation in the murder was subject to both direct and cross-examination. Accordingly, the Nevada Supreme Court reasonably determined that Petitioner failed to demonstrate prejudice under Strickland. Nasby is therefore denied federal habeas relief on Ground 3E.

### J.  Ground 3F – Testifying on Own Behalf

In Ground 3F, Nasby alleges that trial counsel rendered ineffective assistance for failing to allow Nasby to testify on his own behalf. ECF No. 176 at 42. Nasby was not able to rebut the State's case, present his alibi, or explain how he came to possess the murder weapon, and he asserts that the prosecution "trampled his character during trial and closing arguments, without object by defense counsel." *Id*.

The Nevada Supreme Court held:

> Nasby also claimed that trial counsel were ineffective for refusing to allow him to testify. He fails to cite anything in the record indicating he wanted to testify and counsel prevented him from doing so. We conclude the district court did not err in rejecting this claim.

ECF No. 120-4 at 8. The Nevada Supreme Court's rejection of Nasby's ineffective assistance

claim was neither contrary to nor an objectively unreasonable application of *Strickland*.

A defendant's silence on the record when his attorney rests without calling him as a witness waives his right to testify. That waiver also forecloses a claim of ineffective assistance of counsel based upon counsel purportedly "not allowing" the defendant to testify. *See, e.g., United States v. Pino-Noriega*, 189 F.3d 1089, 1094–95 (9th Cir. 1999); *United States v. Joelson*, 7 F.3d 174, 177–78 (9th Cir. 1993); *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993). At trial, Nasby remained silent and did not claim on the record that he wished to testify.

Moreover, Nasby cannot demonstrate either deficient performance or resulting prejudice from counsel's advice that he not testify. At the evidentiary hearing, counsel testified that they recommended to Nasby that he should not testify because the State would destroy his credibility by introducing the intercepted material to impeach him. ECF No. 134-9 at 20, 45. There was not a reasonable probability of a different verdict had Nasby self-servingly testified regarding an alibi or how he came into possession of the gun that would have opened the door to potential impeachment evidence. Trial counsel did not fall below the wide range of professional assistance in advising Nasby to not take the stand considering the concomitant risks of exposing him to cross-examination to present ineffectual testimony. Accordingly, Nasby is denied federal habeas relief on Ground 3F.

### K.  Ground 3G – Failure to Raise Grounds

In Ground 3G, Nasby alleges that appellate counsel rendered ineffective assistance for failure to raise Grounds 1 and 2 of the amended petition. ECF No. 176 at 48–49. He asserts that Grounds 1, 2, and 3 were raised in his first state habeas petition, including a claim that appellate counsel was ineffective. *Id.*

The Nevada Supreme Court ruled that Grounds 1 and 2 were procedurally defaulted because Nasby should have raised them on direct appeal, and he failed to show cause and prejudice. The Nevada Supreme Court held:

> Nasby also made a general claim that appellate counsel was ineffective "for Failure to raise all the meritorious issues contained in this memorandum of law" (emphasis in original). Nasby failed to cite to the record or provide cogent argument or legal authority for how appellate counsel's performance was deficient and prejudiced him.

ECF No. 120-4 at 9. The Nevada Supreme Court's rejection of Nasby's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*.

The Nevada Supreme Court ruled that Nasby failed to present anything more than bare allegations that did not show ineffective assistance. The Court agrees. Nasby failed to demonstrate how, but for appellate counsel's failure to raise claims on direct appeal, the outcome of the appeal would have been different.[8] Moreover, the Supreme Court has held that the defense counsel assigned to appeal a criminal conviction is not constitutionally required to raise every issue requested by the defendant. *Jones v. Barnes,* 463 U.S. 745, 753 (1983). There is no basis for any conclusion that Nasby's counsel acted unreasonably in the manners alleged herein, or that he was prejudiced. The Nevada Supreme Court's ruling on this claim was reasonable. Nasby is therefore denied federal habeas relief on Ground 3G.

### L.  Ground 5 – Lack of Sufficient Corroborating Evidence

In Ground 5, Nasby alleges that there was not sufficient corroborating evidence to sustain his conviction. ECF No. 176 at 52–53. He asserts that the State's case relied on testimony of three accomplices who were enticed by plea bargains. *Id*. Respondents argue that Ground 5 is procedurally defaulted to the extent Nasby asserts a due process claim pursuant to the Fifth, Sixth, and Fourteenth Amendments. ECF No. 200 at 106. Nasby failed to assert his claim on direct appeal based on a violation of federal constitutional rights and he failed to cite to any federal case in support of his claims. *Id*. When granted leave to return to state court to exhaust his claims, the Nevada Supreme Court affirmed denial of this claim as untimely, abuse of writ, and successive. *Id*.

The Court finds that Ground 5 was procedurally defaulted on independent and adequate state law grounds.[9] Other than his reference to his arguments made regarding procedural default as to Ground 1, Nasby does not make a separate argument for cause and prejudice to overcome the procedural default of Ground 5. ECF No. 176 at 65. Nasby failed to demonstrate cause and

---

[8] The Court has already determined under a *de novo* standard, in the alternative, that Nasby's claims asserted in Ground 1 are denied habeas relief.

[9] The Ninth Circuit Court of Appeals has held that the application of the procedural bars at issue in this case constitute independent and adequate state law grounds. *See Moran v. McDaniel*, 80 F.3d 1261, 1268–70 (9th Cir. 1996); *see also Vang v. Nevada*, 329 F.3d 1069, 1073–75 (9 Cir. 2003); *Bargas v. Burns*, 179 F.3d 1207, 1210–12 (9th Cir. 1999).

prejudice to overcome procedural default. A claim of constitutionally ineffective assistance of counsel can be cause to excuse a procedural default. *Murray,* 477 U.S. at 488–89. However, that claim must be raised and exhausted as a separate ground in State court. *Id.* at 489. Also, the claim of ineffective assistance of counsel must itself not be procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446, 452–53 (2000). Nasby did not exhaust Ground 5 in his first state habeas petition. Further, he did not argue that appellate counsel was ineffective for failing to raise the issue. *See* ECF No. 135-2. Because he did not present ineffective-assistance argument to the state courts, the argument cannot constitute good cause to excuse the procedural default of Ground 5. Accordingly, Ground 5 is barred by the procedural default doctrine.

The Court also agrees that the remaining portion of Ground 5 based on equal protection and the Eighth Amendment were not fairly presented to the state appellate court for purposes of exhaustion requirements for federal habeas review. Nasby makes no argument as to this portion of Ground 5. Accordingly, the remaining portion of Ground 5 based on equal protection, and the Eighth Amendment is dismissed as unexhausted.

In the alternative, the Court would deny relief as to Ground 5 on *de novo* review. When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

Sufficiency claims are limited to a review of the record evidence submitted at trial. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Such claims are judged by the elements defined by state law. *Jackson*, 443 U.S. at 324 n.16. The reviewing court must respect the exclusive province of the fact-finder to determine the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from proven facts. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). The district court must assume the trier of fact resolved any evidentiary conflicts in favor of the prosecution, even if the determination does not appear on the record and must defer to that resolution.

At trial, Nasby's accomplices, Jeremiah, Tommie, and Jotee, testified about the events surrounding Beasley's death. Jeremiah testified that one month prior to the night Beasley was killed, Nasby discussed with Jeremiah, Tommie, Jotee, and another member of the gang whether Beasley should be killed. ECF No. 133-1 at 21. Then, on the night of Beasley's death, Nasby showed Jeremiah, Tommie, Jotee, and Beasley his 9mm Browning firearm before they went to the desert under the auspices that they were going for target practice. *Id.* at 25, 27–28. Once in the desert, Nasby shot Beasley. *Id.* at 27–28. Tommie and Jotee both testified that Beasley was shot while they were in the desert and that neither Tommie, Jotee, nor Jeremiah shot Beasley. ECF No. 133-3 at 25, 34. Jeremiah, Tommie, and Jotee also testified that they were charged with the murder of Beasley and entered into plea agreements wherein they received lesser charges. ECF Nos. 133-1 at 31, 133-3 at 25, 133-3 at 34.

Witnesses that were not accomplices also testified at trial. Bradley testified that Nasby confessed to her that he shot Beasley three times while they were in the desert. ECF No. 133-2 at 13. Holmes testified that Nasby confessed to him while they were both in custody that Nasby shot Beasley because Nasby believed Beasley was trying to become the leader of the gang. ECF No. 133-3 at 55. Banks testified that Nasby threatened her because he believed she was telling others that he killed Beasley. ECF No. 133-2 at 8. She also testified that Adams beat her up because Adams believed Banks was telling others that Nasby killed Beasley and that she "need[ed] to keep [her] mouth shut about [Nasby.]" *Id*. at 7–8. Adams testified that Nasby offered her a hammer to kill Banks and that he told Adams that she should have killed Banks. ECF No. 133-3 at 41.

Detectives and multiple crime scene analysts, including a latent print examiner and firearm examiner, testified. The detectives executed a search warrant on Nasby's house and recovered a 9 mm handgun from Nasby's bedroom. ECF No. 133-2 at 20. Torrey Johnson testified that three of the four cartridges were the correct caliber to be fired from the 9mm handgun recovered from Nasby's house. ECF No. 133-3 at 7. Although Johnson could not positively conclude that they were fired from the handgun, he testified that based on the information from the coroner, it was his opinion that the 9mm handgun was the murder weapon. *Id*. at 9.

Viewing the evidence in the light most favorable to prosecution, any rational trier of fact

would have found the essential elements of murder and conspiracy to commit murder, beyond a reasonable doubt. There was sufficient evidence of an agreement or mutual understanding between two or more people to commit the crime of murder. *See* ECF No. 134-2 at 6. There was sufficient evidence of an unlawful killing of a human being with malice aforethought. *Id*. at 10. Based on a review of the record of evidence submitted at trial, the Court concludes that a rational jury could have found the essential elements of the crimes beyond a reasonable doubt.

### M. Ground 7 – Erroneous Jury Instructions

In Ground 7, Nasby alleges that the trial court erroneously instructed the jury as to the elements of first-degree murder, specifically as to willfulness, premeditation, and deliberation in violation of Nasby's rights to due process, equal protection, and a constitutionally sound sentence. ECF No. 176 at 54. Nasby asserts that the trial court used the *Kazalyn*[10] instruction, which defined premeditation but did not separately define willful, deliberate, or premeditated. ECF No. 207 at 75. While Nasby's appeal was pending, the Nevada Supreme Court invalidated the *Kazalyn* instruction in its decision in *Byford v. State*, 994 P.2d 700 (Nev. 2000). *Id.* Nasby argues that because his conviction was still pending on direct appeal and, therefore, not final, at the time the Nevada Supreme Court decided *Byford*, his case must be reversed for a due process violation. ECF No. 176 at 56.

Respondents argue that Ground 7 is procedurally defaulted. ECF No. 200 at 112. They argue that Nasby failed to federalize his claim on direct appeal because he challenged the *Kazalyn* instruction based entirely on state law, and the Nevada Supreme Court rejected his claim on state law on direct appeal. *Id*. Nasby raised claims regarding the jury instruction in his second, fourth, sixth, and seventh state habeas appeals based on due process under the Fourteenth Amendment and that the State must prove every element of a crime beyond a reasonable doubt pursuant to the Fifth and Sixth Amendments. The Nevada Supreme Court affirmed dismissal of the petition as untimely, second and successive, and abuse of writ.[11]

Ground 7 is procedurally defaulted on independent and adequate state grounds and Nasby

---

[10] *Kazalyn v. State*, 825 P.2d 578, 583 (Nev. 1992).

[11] Nasby's seventh state habeas petition is still pending before the Nevada appellate courts.

fails to demonstrate cause and prejudice to overcome procedural default. Nasby failed to present Ground 7 to the state court based on federal constitutional violations and his opening brief on appeal as to this claim cites to Nevada state law almost exclusively. *See* ECF No. 119-5 at 21–22. When presented in state habeas petitions, the Nevada Supreme Court rejected the claim as untimely under Nev. Rev. Stat. § 34.726, second and successive under Nev. Rev. Stat. § 34.810(2), and abuse of writ under Nev. Rev. Stat. § 34.810(1)(b)(2). *See* ECF Nos. 135-6 and 147-2. Because Nasby did not argue that appellate counsel was ineffective for failing to raise the *Kazalyn* issue, he cannot present ineffective assistance of appellate counsel as good cause to excuse procedural default of Ground 7. *See Murray*, 477 U.S. at 488–89; *Edwards*, 529 U.S. 452–53. Accordingly, Ground 7 is barred by the procedural default doctrine.

The Court further agrees that the remaining portion of Ground 7 based on equal protection, constitutionally sound sentence, and the Eighth Amendment were not fairly presented to the state appellate court for purposes of exhaustion requirements for federal habeas review. Nasby makes no argument as to this portion of Ground 7. Accordingly, the remaining portion of Ground 7 based on equal protection, constitutionally sound sentence, and the Eighth Amendment is dismissed as unexhausted.

The Court, nonetheless, would deny relief as to Ground 5 on *de novo* review. Following its ruling in *Garner*[12] and the Ninth Circuit's ruling in *Polk*, the Nevada Supreme Court held in *Nika v. State* that *Byford* was a change or new law concerning distinctiveness of intent elements for first-degree murder and applied prospectively only. 124 Nev. 1272, 1301, 198 P.3d 839, 859 (2008). Nasby argues that *Byford* applies because *Nika* held that *Byford* applies to cases that were pending on direct appeal when *Byford* was decided. ECF No. 176 at 56.

In *Babb*, a habeas petitioner was convicted of first-degree murder under the *Kazalyn* instruction. *Babb v. Lozowsky*, 719 F.3d 1019 (9th Cir. 2013). The Ninth Circuit concluded that because the petitioner's conviction had yet to become final when the Nevada Supreme Court issued a decision invalidating the *Kazalyn* instruction, "it was an unreasonable application of established

---

[12] *Garner v. State*, 6 P.3d 1013 (Nev. 2000).

federal law and violation of Babb's due process rights for the Nevada court not to apply the change in *Byford*." *Babb*, 719 F.3d at 1032.

In *Moore v. Helling*, the Ninth Circuit held that due to the Supreme Court's intervening decision in *White v. Woodall*, 572 U.S. 415 (2014), *Babb* is no longer good law with respect to defendants whose convictions became final prior to *Bunkley v. Florida*, 538 U.S. 835 (2003). *Moore v. Helling*, 763 F.3d 1011, 1021 (9th Cir. 2014). The Ninth Circuit concluded in *Moore* that *Babb* could not survive *Woodall*. *Id. Babb* used *Bunkley* to conclude that the Nevada Supreme Court unreasonably applied clearly established federal law even though *Bunkley* had yet to be decided when the state court issued its relevant decision. *Id*.

Respondents argue and the Court agrees that *Moore* controls. In *Moore*, the petitioner was convicted prior to *Byford*, his appeal was pending after *Byford* issued, and his conviction was final before *Bunkley* was issued and the Ninth Circuit determined that the Nevada Supreme Court did not unreasonably apply clearly established Supreme Court law when it declined to apply the *Byford* instruction in Moore's case. *Moore*, 763 F.3d at 1021–22. Like *Moore*, Nasby was convicted prior to *Byford* and his appeal was pending after *Byford* issued. In addition, Nasby's conviction was final prior to *Bunkley*. Therefore, Nasby failed to show that the trial court's use of the *Kazalyn* instruction violated his due process rights. Based on the foregoing, the Court is precluded from granting habeas relief on Ground 7.[13]

## V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Nasby. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the

---

[13] Because the Court finds Nasby is not entitled to habeas relief as to Ground 7, the Court need not address the parties' arguments regarding harmless error.

constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

## VI.   CONCLUSION

It is therefore ordered that Petitioner Brendan Nasby's Amended Petition for Writ of Habeas Corpus (ECF No. 176) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of the Court is directed to substitute Tim Garrett for Respondent E.K. McDaniel, enter judgment accordingly, and close this case.

DATED this 30th day of March 2022.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE